COURT OF APPEALS DIV 1
2014 MAR 17 AM 10: 14



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69271-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES STEVEN JOHNSON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 17, 2014 |

LAU, J. — James Johnson appeals his high-end standard range sentence for second degree attempted robbery. He challenges the court's offender score calculation and argues he received ineffective assistance of counsel at sentencing. Because the trial court properly calculated Johnson's offender score and Johnson fails to show that prejudice resulted from his counsel's alleged deficient performance, we affirm.

## FACTS

### Second Degree Attempted Robbery Conviction

The State charged James Johnson with second degree attempted robbery. A jury found Johnson guilty as charged.

At sentencing, the State offered evidence of nine prior felony convictions: one for second degree murder, four for obtaining a controlled substance by forged or altered prescription, two for forgery, one for second degree possession of stolen property, and one for second degree burglary. The issues on appeal concern two groups of these

convictions. One group comprises the four prescription forgeries. The other comprises the possession of stolen property and one of the forgeries.

### Prior Prescription Forgery Convictions

The State introduced the judgments and sentences, informations, affidavits of probable cause, and plea agreements for the prior prescription forgery convictions. These documents show that in April 1996, Johnson was convicted of one count of obtaining a controlled substance by forged or altered prescription under Snohomish County cause 95-1-01647-7 and three counts of obtaining a controlled substance by forged or altered prescription under Snohomish County cause 95-1-01648-5. The judgments show on their faces that the crimes were committed on four different dates. Other documents show Johnson was charged and pleaded guilty to crimes committed on four different dates. In sentencing Johnson for the prescription forgeries, the court treated the four crimes as separate criminal conduct.

### Prior Second Degree Possession of Stolen Property and Forgery Convictions

Similarly, the State introduced the judgment and sentence, information, affidavit of probable cause, and plea agreement for these crimes. These documents show that in November 1999, Johnson was convicted of one count of second degree possession of stolen property and one count of forgery in Snohomish County cause 97-1-01472-1. The information showed that the possession of stolen property involved two credit cards belonging to Talia Bowie. The forgery involved signing a false name to a credit card slip in payment for cab fare. The judgment and sentence contains no finding that these crimes constituted the same criminal conduct. In computing Johnson's offender score, the sentencing court treated Johnson's prior prescription forgery crimes as separate criminal conduct.

### Prior Second Degree Murder Conviction

In October 2001, King County Superior Court sentenced Johnson on one count of second degree murder. The court scored Johnson's three 1996 convictions for obtaining a controlled substance by forged or altered prescription under Snohomish County cause 95-1-01648-5 as "same crim[inal] conduct" and further scored his 1999 convictions for possessing stolen property and forgery under Snohomish County cause 97-1-01472-1 as "same crim[inal] conduct." The record does not indicate what information the King County court relied on in making those determinations.

### Sentencing for Current Offense

For the current attempted second degree robbery offense, the State scored each prior crime described above as 1 point, for a total offender score of 10. Before his sentencing hearing, Johnson questioned his 1996 felony prescription forgery convictions on same criminal conduct grounds. He claimed that these convictions counted as only 1 point in his offender score, as opposed to the 4 points calculated by the State. He also argued that his 1999 second degree possession of stolen property and forgery convictions constituted same criminal conduct. The court continued the sentencing hearing to address these issues. The State submitted a supplemental sentencing memorandum arguing that (1) Johnson's 1996 prescription forgery convictions did not constitute same criminal conduct because the crimes were committed on four different and nonconsecutive days and at different locations, (2) Johnson's 1999 possession of stolen property and forgery convictions did not constitute same criminal conduct because they involved different victims, and (3) the King County court erred when it found these crimes constituted the same criminal conduct in 2001.

At the sentencing hearing, defense counsel acknowledged receipt of the State's supplemental sentencing memorandum and agreed with the State's offender score calculation as a 10. This yielded a standard range of 47¼ to 60 months' confinement. The prosecutor argued for a 60-month sentence based on Johnson's "extensive criminal history, his very rapid recidivism after having just gotten out of prison on his prior murder conviction, and the impact on the victim." Report of Proceedings (Aug. 24, 2012) (RP) at 173.

Defense counsel submitted certificates showing some of Johnson's accomplishments while in prison. At the sentencing hearing, defense counsel agreed that a 60-month sentence was appropriate. Because this was the statutory maximum, it included no period of community custody. Defense counsel added, "The classes and things that Mr. Johnson was doing towards the end of his prison sentence, also the fact that he had been attempting to start his own business, I think he was on track to try to better himself." RP at 174-75. Johnson told the court that he disagreed with his counsel and requested a 48-month sentence:

> I don't agree with my attorney's recommendation of the high end. I would respectfully ask you to consider the low end. When I submitted my letter to you, the first thing that I expressed to you was my regret for what happened with . . . the victim. I feel bad for what happened. It was a very poor decision on my part.
> But I'd also like you to take into consideration that the State offered me a plea bargain of 48 months before we proceeded to trial. The facts of the case and my record have not changed between the time that the State offered the plea bargain and essentially after the conviction.

RP at 175-76.

The court briefly recessed so defense counsel could confer with Johnson. After the recess, Johnson again asked for a 48-month sentence. Defense counsel stated,

I don't have anything to add, your Honor. Mr. Johnson would like to request 48 months, and he has expressed that. I would like the Court to consider that. But I have nothing to add, personally, no, from what he's already stated.

. . . .

Your Honor, again, I submitted the materials from Mr. Johnson's education when he was in custody from things he was attempting to do when he is out of custody. I think those materials are positive on Mr. Johnson's behalf. Other than that, I think the Court is aware of the record. I think the Court is aware of the facts. And I have nothing further to add.

RP at 178.

The court "view[ed] the defense recommendation as a 48-month recommendation towards the low end." RP at 179. The court outlined in detail the conflicting considerations affecting the sentence, including Johnson's high offender score, his letter to the court, the materials and certificates defense counsel submitted, the victim impact statement, the seriousness of Johnson's prior crimes, and his rapid recidivism. Based on all of these factors and the court's view that a short period of community custody would benefit Johnson, the court imposed a sentence of 58 months' confinement and 2 months' community custody. Johnson does not challenge his conviction, but appeals his offender score calculation and sentence.

## ANALYSIS

### Offender Score Calculation

Johnson challenges the trial court's computation of his offender score. Although defense counsel affirmatively agreed at sentencing that the State's calculation was correct, the State concedes this issue can be raised for the first time on appeal because Johnson claims his offender score reflects a legal error. Specifically, Johnson claims that the 2001 King County sentencing court's action in counting three of his 1996 prescription forgery convictions as well as his 1999 forgery and possession of stolen property convictions as "same criminal conduct" forecloses any future court from

-5-

counting those crimes as separate conduct. Thus, Johnson claims he was entitled to have his prior convictions counted together as a matter of law without regard to the facts of those convictions.

A sentencing court acts without authority under the Sentencing Reform Act of 1981 when it imposes a sentence based upon a miscalculated offender score. In re Pers. Restraint of Johnson, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997). We review an offender score calculation de novo but review a "'determination of what constitutes the same criminal conduct [for] abuse of discretion or misapplication of the law.'" State v. Mutch, 171 Wn.2d 646, 653, 254 P.3d 803 (2011) (alteration in original) (quoting State v. Tili, 139 Wn.2d 107, 122, 985 P.2d 365 (1999)). A trial court abuses its discretion if its decision "(1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.'" State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

RCW 9.94A.525(5)(a)(i) explains how a sentencing court scores multiple prior convictions:

> In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:
> (i) Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently or prior juvenile offenses for which sentences were served consecutively, whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used. The current

sentencing court may presume that such other prior offenses were not the same criminal conduct from sentences imposed on separate dates, or in separate counties or jurisdictions, or in separate complaints, indictments, or informations.

This subsection sets out two alternative scoring rules. Under the first sentence, the current sentencing court is required to treat prior offenses as a single offense if such offenses "were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct." RCW 9.94A.525(5)(a)(i). If there was no such finding, the second sentence applies. That sentence requires the current sentencing court to make its own determination "using the 'same criminal conduct' analysis found in RCW 9.94A.589(1)(a)."[1] RCW 9.94A.525(5)(a)(i).

To determine how these provisions apply, we must examine RCW 9.94A.589. That section sets forth rules for determining whether sentences will be consecutive or concurrent. Subdivision (1)(a) contains the default rule for multiple current offenses:

> Except as provided in (b) or (c) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition applies in cases involving vehicular assault or vehicular homicide even if the victims occupied the same vehicle.

RCW 9.94A.589(1)(a).

---

[1] Even where the prior sentencing court did not explicitly make a finding of same criminal conduct, if the court ordered that the sentences be served concurrently, the current sentencing court must independently determine whether the prior convictions "encompass the same criminal conduct" and, if they do, must count them as one offense. RCW 9.94A.525(5)(a)(i); State v. Torngren, 147 Wn. App. 556, 563, 196 P.3d 742 (2008).

RCW 9.94A.589(1)(a) only applies "whenever a person is to be sentenced for two or more current offenses." RCW 9.94A.589(1)(a) (emphasis added). It, thus, applies only to the original sentencing proceeding. In subsequent proceedings when a court is determining criminal history, the offender is no longer "to be sentenced for two or more current offenses." RCW 9.94A.589(1)(a). Thus, any subsequent determination with regard to criminal history is not made "under RCW 9.94A.589(1)(a)." RCW 9.94A.525(5)(a)(i). RCW 9.94A.525(5)(a)(i) distinguishes between same criminal conduct determinations made "under RCW 9.94A.589(1)(a)" and those made "using the 'same criminal conduct' analysis found in RCW 9.94A.589(1)(a)." RCW 9.94A.525(5)(a)(i).

Johnson claims that RCW 9.94A.525(5)(a)(i) required the trial court to score the 1996 and 1999 convictions the same as the 2001 King County Superior Court did because its decision estops later sentencing courts from scoring those crimes differently. Johnson does not dispute that some or all of the three 1996 counts and two 1999 counts were not actually the same criminal conduct; rather, he limits his claim to the binding effect of the 2001 King County Superior Court judgment and sentence. He specifically claims, "[I]f a prior trial court has determined that two or more convictions constitute the same criminal conduct, the current sentencing court is bound by that determination." Appellant's Br. at 9.

RCW 9.94A.525(5)(a)(i) does not support Johnson's position. Johnson relies on the sentence, "Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score." But his argument ignores the circumstances when a trial court makes this determination under RCW 9.94A.589(1)(a). As explained

above, this latter statute applies only to a trial court finding for <u>current offenses</u> for which

a defendant is being sentenced. This means that a court considering whether multiple

prior convictions constitute the same criminal conduct is bound by a decision of the trial

court that convicted the defendant of the prior offenses. This may reflect the

legislature's determination that the court convicting a defendant of a crime has the most

complete information about the facts and circumstances of that crime. However,

because decisions made later by other courts in the context of deciding whether prior

convictions constitute the same criminal conduct are not made under RCW

9.94A.589(1)(a), the first sentence of RCW 9.94A.525(5)(a)(i) does not apply here.

That sentence would apply only if the trial court in Snohomish County causes

95-1-01648-5 and 97-1-01472-1 had found that the offenses on which it sentenced

Johnson constituted the same criminal conduct.[2]

---

[2] Statutory history supports this analysis. <u>See</u> <u>In re Troxel</u>, 87 Wn. App. 131, 136, 940 P.2d 698 (1997) (analyzing statutory history to support court's reading of a statute's limitations). For purposes of calculating the offender score, the Sentencing Reform Act counted all prior adult convictions served concurrently as one offense. Laws of 1983, ch. 115, § 7(8); Laws of 1984, ch. 209, § 19(11). In 1986, the legislature expanded the number of prior convictions that would count toward the offender score:

> In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:
>
> (a) Prior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently whether those offenses shall be counted as one offense or as separate offenses . . . .

Laws of 1986, ch. 257, § 25(5). At the same time, the legislature amended RCW 9.94A.400(1)(a) to create a "same criminal conduct" standard for multiple current offenses. Laws of 1986, ch. 257, § 28. RCW 9.94A.400(1)(a) is the predecessor of RCW 9.94A.589.

Under the 1986 amendments, the reference to a finding "under RCW 9.94A.400(1)(a)" clearly referred to a finding by the original sentencing court because the statute did not provide for any other court to make any such determination. The 1986 statute was viewed as conferring unrestricted discretion on subsequent

Here, the trial court acted properly under a correct interpretation of RCW 9.94A.525(5)(a). There has been no prior determination under RCW 9.94A.589(1)(a) that any of Johnson's prior convictions constituted the same criminal conduct. Consequently, the current sentencing court was required to decide whether to count those crimes separately "using the 'same criminal conduct' analysis found in RCW 9.94A.589(1)(a)." RCW 9.94A.525(5)(a)(i). The legislature intended the phrase "same criminal conduct" to be construed narrowly. State v. Flake, 76 Wn. App. 174, 180, 883 P.2d 341 (1994). If any one of the factors is missing, the multiple offenses do not encompass the same criminal conduct. State v. Lessley, 118 Wn.2d 773, 778, 827

---

sentencing courts to decide what crimes would be included in criminal history whenever the defendant had served concurrent sentences for crimes that had not been found by the original sentencing court to encompass the same criminal conduct. See State v. McCraw, 127 Wn.2d 281, 287-88, 898 P.2d 838 (1995), superseded by statute as stated in State v. Bolar, 129 Wn.2d 361, 917 P.2d 125 (1996). The 1995 legislature limited subsequent courts' discretion by adding the underlined language:

> Prior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.400(1)(a) . . . .

Laws of 1995, ch. 316, § 1(6)(a)(i).

The 1995 Senate Bill Report for this amendment states, "When counting prior offenses that were served concurrently, the offenses count as one if they were specifically found by the sentencing court to encompass the same criminal conduct. Otherwise, the court has discretion whether to count the offenses separately or as one." S.B. Rep. on Substitute H.B. 1140, 54th Leg., Reg. Sess. (Wash. 1995) (emphasis added). It continues, "When scoring prior concurrently served offenses that the prior sentencing judge did not specifically determine encompassed the same criminal conduct, the current sentencing judge must determine whether the offenses count as one or separately by applying the 'same criminal conduct' analysis." S.B. Rep. on Substitute H.B. 1140, 54th Leg., Reg. Sess (Wash. 1995) (emphasis added). This language confirms that "same criminal conduct" determinations are binding only if made by the original sentencing court.

P.2d 996 (1992). Moreover, because a finding by the sentencing court of same criminal conduct always favors the defendant, "it is the defendant who must establish [that] the crimes constitute the same criminal conduct." State v. Graciano, 176 Wn.2d 531, 539, 295 P.3d 219 (2013).

Under the above analysis, the 1996 prescription forgery convictions were not the same criminal conduct because Johnson committed the crimes on completely different and nonconsecutive days. The 1999 forgery and possession of stolen property offenses were not the same criminal conduct because they were committed against different victims.[3] Johnson does not argue that these crimes factually constituted the same criminal conduct—his only argument is that the current sentencing court was bound by the 2001 King County Superior Court's ruling in that regard. We conclude that the trial court properly counted Johnson's 1996 and 1999 convictions separately and, thus, properly declined to follow the 2001 court's "same criminal conduct" determination. The 1996 and 1999 sentences support applying the State's recommendation to score the crimes as separate offenses, rather than the same criminal conduct.

Ineffective Assistance of Counsel

In his appellate brief and his pro se statement of additional grounds, Johnson argues he received ineffective assistance of counsel at sentencing. He alleges two areas of ineffectiveness: (1) counsel stipulated to the offender score and (2) "despite Johnson's clearly expressed desire to seek a low-end standard range sentence, [counsel] inexplicably concurred with the prosecutor's recommendation for the harshest

---

[3] As described above, Talia Bowie was the only victim of the possession of stolen property count. Multiple victims existed for the forgery count (including the cab driver and the credit card company). Two crimes cannot be the same criminal conduct if one crime involves only one victim and the other involves multiple victims. State v. Davis, 90 Wn. App. 776, 782, 954 P.2d 325 (1998).

sentence possible." Appellant's Br. at 10. To establish ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice requires "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If one of the two prongs of the test is absent, we need not inquire further. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

The first alleged deficiency is immaterial. The State concedes that Johnson can challenge the computation of Johnson's offender score on appeal notwithstanding counsel's stipulation at trial. And as discussed above, the State correctly computed Johnson's offender score in its sentencing memorandum. Defense counsel's stipulation to the correct offender score was neither deficient performance nor prejudicial.

Regarding the second alleged deficiency, even assuming defense counsel's performance was deficient for seeking a sentence at the top of the range,[4] Johnson fails to show prejudice. As Division Three of this court noted:

> [A]n allegedly unsuccessful or poor quality sentencing argument alone is unlikely to result in demonstrable prejudice because of the near impossibility of showing a nexus between the argument and the eventual sentence. We must be persuaded the result would have been different. [State v.] McNeal, 145 Wn.2d [352,] 362, 37 P.3d 280 [2002]. A standard range sentence is a matter of broad trial court discretion. Argument merely attempts to influence the court's exercise of its sentencing discretion.

State v. Goldberg, 123 Wn. App. 848, 853, 99 P.3d 924 (2004). Here, the court treated the defense recommendation as one for 48 months, the low end of the standard range.

---

[4] The State admits that it "cannot . . . suggest any valid tactical reason in this case for seeking a sentence at the top of the range." Resp't's Br. at 16.

The court "focus[ed] . . . on the things that [defense counsel] has pointed to as justifying something less than the high end." RP (Aug. 24, 2012) at 180. The court considered factors supporting a lenient sentence, as well as factors supporting a more severe sentence. The court's 58-month sentence was slightly less than the 60-month statutory maximum. Given the court's careful analysis and exercise of its discretion, Johnson fails to show a reasonable probability that any defective performance affected his sentence—and, thus, he fails to show prejudice.

## CONCLUSION

Because the trial court correctly computed Johnson's offender score and Johnson fails to establish ineffective assistance of counsel, we affirm his conviction and sentence.

_____

WE CONCUR:

_____          _____