# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47680-1-II |
| Respondent, | |
| v. | |
| ERIC CHRISTOPHER MARTIN, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A jury found Eric C. Martin guilty of burglary in the first degree, felony harassment, assault in the fourth degree, malicious mischief in the third degree, and two counts of assault in the second degree. He appealed and, in an unpublished opinion, this court dismissed one of the assault in the second degree convictions and remanded for resentencing. *State v. Martin,* noted at 185 Wn. App. 1014, 2014 WL 7462511. Martin appeals again, this time arguing his felony harassment and remaining assault in the second degree conviction constituted the same criminal conduct and, therefore, should have been counted together in calculating his offender score. We hold the sentencing court properly scored the two offenses separately and affirm.

## FACTS

Martin dated Malory Wilson for four years. They then dated on and off for another year. Martin was physically abusive and made death threats to Wilson during their relationship.

One evening, Wilson woke up and discovered Martin in her bathroom smoking what she believed to be crack cocaine. She yelled at him to leave her house, which angered Martin. He

grabbed Wilson by the neck and repeatedly slammed her against the shower door while holding her off the ground with both of his hands. Martin dropped Wilson and then grabbed her by the neck again with one hand. Eventually, Martin let go, and looked "like he realized what he was doing and he stopped." 2 Report of Proceedings (RP) at 222. Wilson then reached for her phone. Martin became enraged again and knocked the phone out of her hand. He then walked out of the room, but soon returned and grabbed Wilson by the throat, saying "I'm gonna kill you before I go to jail." 2 RP at 224. Wilson believed that Martin would kill her.

Martin left the house and Wilson locked the door. Seconds later, Martin returned and broke down the door. He grabbed Wilson, threw her to the ground, and pinned her down with his legs. He then took money out of Wilson's purse and left the house. Wilson called the police.

The State charged Martin with burglary in the first degree, robbery in the first degree, felony harassment, assault in the fourth degree, malicious mischief in the third degree, and two counts of assault in the second degree. All crimes charged included a domestic violence sentencing aggravator.

The jury found Martin guilty of burglary in the first degree, felony harassment, assault in the fourth degree, malicious mischief in the third degree, and two counts of assault in the second degree, and not guilty of robbery in the first degree. The jury found that Martin and Wilson were not members of the same family or household so the domestic violence aggravating factor did not apply.

Martin appealed, arguing his two assault convictions constituted the same criminal conduct. *Martin*, 2014 WL 7462511, at *1. The State conceded. *Martin*, 2014 WL 7462511, at *1. In an unpublished opinion, we accepted the State's concession, vacated one of the assault in the second degree convictions, and remanded for resentencing. *Martin*, 2014 WL 7462511, at *1,

2

*5-*6. We also noted that Martin was entitled to a full resentencing hearing on remand, at which time he could raise issues not raised at his initial sentencing. *Martin*, 2014 WL 7462511, at *5.

At resentencing, Martin argued the remaining assault in the second degree conviction and the felony harassment conviction comprised the same criminal conduct. The sentencing court found the assault and harassment did not constitute the same criminal conduct and scored each crime separately in calculating Martin's offender score. The court imposed a standard range sentence. Martin appeals.

## ANALYSIS

### I. SAME CRIMINAL CONDUCT

Martin contends the sentencing court erred in finding his assault in the second degree and felony harassment convictions did not comprise the same criminal conduct for sentencing purposes. We review offender score calculations de novo but review "'a determination of what constitutes a same criminal conduct [ruling for] abuse of discretion or misapplication of the law.'" *State v. Johnson*, 180 Wn. App. 92, 100, 320 P.3d 197 (quoting *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011)), *review denied*, 181 Wn.2d 1003 (2014). "A trial court abuses its discretion if its decision '(1) adopts a view that no reasonable person would take and that view is thus manifestly unreasonable; (2) rests on facts unsupported in the record and is thus based on untenable grounds; or (3) was reached by applying the wrong legal standard and is thus made for untenable reasons.'" *Johnson*, 180 Wn. App. at 100 (quoting *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012)).

A court may consider current convictions involving the same criminal conduct as one crime for sentencing purposes. RCW 9.94A.589(1)(a). Offenses will count as the same criminal conduct only when they (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a). Courts narrowly construe the same criminal conduct rule and if any of the three elements is missing, each conviction must count separately in the calculation of the defendant's offender score. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

Here, there is no dispute that Martin committed assault and felony harassment at the same time and place with the same victim. The issue then is whether the criminal intent changed between the two crimes.[1]

Crimes may involve the same criminal intent if they were part of a "continuing, uninterrupted sequence of conduct." *Porter*, 133 Wn.2d at 186. But when an offender has time to "pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act," and makes the decision to proceed, he or she has formed a new intent to commit the second act. *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997). In *Grantham*, the defendant anally raped the victim. 84 Wn. App. at 856. The victim did not move afterwards, and the defendant began kicking her. *Grantham*, 84 Wn. App. at 856. She then begged for him to stop and for him to take her home. *Grantham*, 84 Wn. App. at 856. He threatened the victim not to tell and then forced her to perform oral sex on him. *Grantham*, 84 Wn. App. at 856. The *Grantham* court properly held that there was evidence of new objective intent between the two rapes. 84 Wn.

---

[1] In this context, intent does not mean the particular mens rea required for the crime. *State v. Davis*, 174 Wn. App. 623, 642, 300 P.3d 465 (2013). Rather, it means the defendant's "'objective criminal purpose in committing the crime.'" *Davis*, 174 Wn. App. at 642 (quoting *State v. Adame*, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990)).

App. at 859. In so holding, the court reasoned that the defendant had time to reflect on what he did, threaten the victim not to tell, and he then used new force to commit the second rape. *Grantham,* 84 Wn. App. at 859.

The facts here are similar to the facts in *Grantham.* The evidence shows Martin strangled Wilson in the bathroom, but made no threats at the time. Martin then let go of Wilson and appeared to calm down. After Wilson reached for her phone, Martin became enraged again. He walked out of the bathroom, returned, and grabbed Wilson by the throat. He said, "I'm gonna kill you before I go to jail." 2 RP at 224. Martin's actions show he had time to stop, reflect on his actions, and form a new intent to prevent Wilson from calling police by threatening to kill her. His intent, therefore, changed between the assault and the felony harassment.

Because tenable grounds exist to show the two crimes involved different intents, the sentencing court did not abuse its discretion in finding the crimes did not entail the same criminal conduct. The court did not err in calculating Martin's offender score.

## II.    APPELLATE COSTS

Martin objects to awarding appellate costs to the State in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), arguing he lacks the ability to pay. The trial court entered an order of indigency for this appeal on June 12, 2015. (CP 201) We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f). RCW 10.73.160(1) vests the appellate court with discretion to award appellate costs. Under RAP 14.2, that discretion may be exercised in a decision terminating review. We exercise our discretion and hold that an award of appellate costs to the State is not appropriate.

5

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Lee, P.J.

_____
Sutton, J.